Case 1:05-cv-01276-RCL   Document 204   Filed 11/20/14   Page 1 of 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
---------------------------------------------------------
:
UNITED STATES OF AMERICA                  :
*ex rel.* HARRY BARKO,                       :        CASE NO. 1:05-CV-1276
:
Plaintiff-Relator,              :
:
v.                                       :        OPINION & ORDER
:        [Resolving Doc. 154]
:
HALLIBURTON COMPANY *et al.*,                :
:
Defendants.                     :
:
---------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this qui tam case, Plaintiff-Relator Harry Barko disputes the attorney-client privilege and attorney work product claims made by Defendants Kellogg Brown & Root Services, Inc., KBR Technical Services, Inc., Kellogg, Brown & Root Engineering Corporation, Kellogg, Brown & Root International, Inc., and Halliburton Company (collectively "KBR") regarding certain documents.

KBR has submitted these documents along with three privilege logs for *in camera* review. The first privilege log deals with Code of Business Conduct (COBC) investigation reports. The second and third privilege logs primarily cover other documents that KBR claims attorney-client privilege or work product protection for, though these logs also contain six documents related to the COBC. KBR has filed a motion for a protective order as to the documents in Privilege Logs #2 and 3.[1/] Barko opposes this motion.[2/]

---

[1/]Doc. 154. In the time since these privilege logs were produced, Plaintiff-Relator Barko has disclaimed any challenge to KBR's assertion of privilege over a number of documents. *See* Doc. 154-7. Specifically, Plaintiff-Relator does not seek the production of Documents 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 in Privilege Log #2 or Documents 5, 6, 13,
(continued...)

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** KBR's motion for a protective order.[3] Appendix A, a chart based on Privilege Logs #2 and 3 as provided by KBR, contains a complete list of the documents KBR has withheld or redacted along with the Court's ruling on KBR's claims of privilege and work product protection.

## I. Legal Standards and Introduction

After reviewing the documents referenced in the second and third privilege logs, the Court grants some of KBR's claims of privilege or protection, but denies others.

In general, the attorney-client privilege shelters confidential communications between an attorney and client, including their agents, made with a primary purpose of seeking or providing legal advice.[4] A "primary purpose" is defined as "one of the significant purposes" of the communication.[5] The attorney-client privilege, like all privileges, is in derogation of the truth-seeking process, and is therefore to be construed strictly.[6] The party asserting privilege bears the

---

[1](...continued)
14, 16, 19, 34, 39, 40, 41, 42, 43, 59, 63, 67, 68, 69, 71, 199 and 200 from Privilege Log #3. (The Court notes that the document numbers specified by Plaintiff-Relator in Doc. 154-7 refer to an older privilege log. The document numbers given by the Court in this footnote and throughout this opinion refer to the corresponding documents contained in the privilege logs produced for *in camera* inspection.) Because Plaintiff-Relator does not seek production of these documents, the Court will not rule on whether or not they are privileged as the issue is moot.

[2] Doc. 162.

[3] Plaintiff-Relator Barko has suggested that the Court should deny the protective order in its entirety because KBR failed to comply with the requirement of Rule 26(c)(1) that the motion "include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *See* Doc. 162 at 1-2. The Court finds that this possible technical deficiency does not prevent it from deciding the merits of KBR's assertions of privilege. First, the Court is aware from numerous filings that the parties have been engaged in ongoing discussions regarding their discovery disputes. *See, e.g.*, Doc. 154 at 2–3. Second, and more importantly, KBR would not have waived any applicable privileges by failing to comply with this requirement. KBR produced these documents for *in camera* inspection at the Court's instruction so the Court could evaluate KBR's assertions of privilege. Doc. 148. Because the Court would have to make its decisions regardless of whether or not KBR had moved for a protective order, the issue raised by Plaintiff-Relator is largely unimportant.

[4] *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (internal citations omitted).

[5] *Id.* at 760.

[6] *See United States v. Nixon*, 418 U.S. 683, 710 & n.18 (1974).

burden of demonstrating that it applies.[7]

Work product protection attaches to "documents and tangible things that are prepared in anticipation of litigation or for trial."[8] In this circuit, a document is prepared "in anticipation of litigation" if "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"[9] This standard both requires a subjective belief that litigation was a real possibility and requires that the belief be objectively reasonable.[10]

Broadly speaking, there are three categories of documents the Court concludes have been improperly withheld. In the first, the attorney's merely incidental connection to the documents combines with other factors to convince the Court that the documents neither had a significant purpose of seeking or providing legal advice nor were prepared in anticipation of litigation. In the second, the Court concludes that the material is neither privileged nor protected because it discloses only that an attorney was consulted and the general topic of the consultation, but not the substance of those communications. In the third, the Court concludes that numerous litigation hold notices are not privileged as they were not intended to be kept confidential and are not protected work product because they merely describe KBR's document retention practices.

## II. Documents with Attorneys as Incidental Recipients[11]

---

[7] *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006).

[8] Fed. R. Civ. P. 26(b)(3)(A).

[9] *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir 1998)).

[10] *In re Sealed Case*, 146 F.3d at 884.

[11] This section's analysis applies to Document 89 in Privilege Log #3 and some of the claimed redactions in Document 17 in Privilege Log #2 and Documents 10, 20, 24, 25, 32, 36, 56, 62, 70, 72, and 77 in Privilege Log #3. Other claimed redactions in Document 17 in Privilege Log #2 and Documents 10, 20, 24, 25, 32, 36, 56, 62, 70, 72, and
(continued...)

In the first category of documents that the Court concludes are subject to disclosure, KBR attorneys were merely copied on or were added recipients of emails that were not sent for the purpose of seeking or providing legal advice. As noted above, in order for a communication to be sheltered by the attorney-client privilege, it must have a "primary purpose"—defined as "one of the significant purposes"—of either obtaining or providing legal advice.[12] Parties, including corporations, may not shield otherwise discoverable documents from disclosure by including an attorney on a distribution list.[13] Thus, the fact that an attorney either is copied on or is one of multiple recipients of an email does not on its own support a claim of attorney-client privilege.

KBR's privilege logs claim that the documents described in this section request, provide, or discuss legal advice, or convey information for the purpose of obtaining legal advice. The Court, however, concludes after its *in camera* examination that these were not "one of the significant purposes" of these documents. The attorneys were merely incidental recipients of communications made for ordinary business purposes—not for obtaining or providing legal advice. Moreover, none

---

[11](...continued)
77 in Privilege Log #3 are covered by the analysis in Section III.
    This section's analysis also applies to certain portions of other documents, for which the Court approves limited redactions:
- Document 26 in Privilege Log #2 is not privileged, except for the email on page 3 of the document from Michael Hatch dated May 4, 2004. That email may be redacted as it is a privileged communication from an attorney. The rest of KBR's redactions covered communications where attorneys were mere incidental recipients, and were thus improper.
- Document 36 in Privilege Log #2 is partially privileged. The two emails on page 1 of the document—from Bill Courtney dated January 13, 2003, and from Tod Nickles dated January 13, 2003—are not privileged, as an attorney is only an incidental recipient, and in any event they do not seek or provide legal advice. However, the rest of the emails in the document are privileged communications that may be redacted.
- Documents 26 and 121 in Privilege Log #3 are not privileged, except for three sentences in the first paragraph of the email on page 1 of the document from Larry Kosowski dated April 7, 2004. Of the five sentences in that paragraph, the first and last are not privileged. The middle three sentences are privileged and may be redacted.

[12]*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014).

[13]*Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005) ("'A corporation cannot be permitted to insulate its files from discovery simply by sending a "cc" to in-house counsel.'" (quoting *USPS v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994))).

of the other employees involved in the communications were acting as agents of attorneys for the purposes of providing legal advice or gathering information to allow the attorneys to provide legal advice. The communications are thus outside the scope of the attorney-client privilege.

These documents also do not qualify for work product protection. Just as these communications lacked a "significant purpose" of seeking or providing legal advice, they were not prepared "in anticipation of litigation." As described above, the documents in question consist of ordinary business communications between non-attorneys with an attorney or attorneys as additional recipients. In the same way that the addition of an attorney to a distribution list does not transform the documents into requests for legal advice, it does not transform them into documents prepared in anticipation of litigation.

### III. Documents Reflecting That a Consultation Occurred[14]

Another subset of documents for which the Court concludes that neither attorney-client privilege nor work product protection apply are those that reference communications with attorneys without disclosing the contents of those communications. The underpinning of this holding is that the mere fact of consultation with a lawyer about an issue is generally neither privileged nor protected.[15] Attorneys thus may properly cross-examine witnesses about whether they spoke to their attorneys about their testimony prior to taking the stand at trial or during a break in a deposition, so long as they do not inquire into the specific content of the conversation between attorney and client.

---

[14] This section's analysis applies to Document 16 in Privilege Log #2 and Documents 23, 37, 57, 75, 78, 133, and 209 in Privilege Log #3. It also applies to some of the claimed redactions in Document 17 in Privilege Log #2 and Documents 10, 20, 24, 25, 32, 36, 56, 62, 70, 72, and 77 in Privilege Log #3. Other claimed redactions in those documents are covered by Section II.

[15] *United States v. Legal Servs. for New York City*, 249 F.3d 1077, 1081 (D.C. Cir. 2001) ("Courts have consistently held that the general subject matters of clients' representations are not privileged. Nor does the general purpose of a client's representation necessarily divulge a confidential professional communication, and therefore that data is not generally privileged. To be sure, there are exceptions, but as always the burden of demonstrating the applicability of the privilege lies with those asserting it." (internal citations omitted)).

Similarly, a consultation with a lawyer does not make underlying facts privileged, even though the substance of the discussion about those facts would be.[16]

Thus, documents that show one corporate employee telling another to consult a lawyer on a general topic without conveying the specific content of the desired communication are no more immune to production than a witness's statement that he discussed that broad topic with his or her attorney prior to testifying at a trial.  By the same token, documents that reflect only that a non-attorney spoke to or received advice from an attorney and then acted are discoverable because they do not reflect privileged communications.[17]  Neither the fact of the consultation nor the eventual action taken are protected from disclosure, and the fact that clients sometimes choose not to follow their attorneys' advice prevents such documents from implicitly disclosing any more than the general nature of the confidential communications sheltered by the attorney-client privilege.[18]  Thus, these types of documents must be disclosed.[19]

---

[16]*See, e.g.*, Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 6.7.1 (2014) ("[P]rivileges protect only communications, not the facts stated in the communication, facts learned by virtue of the relationship; the fact that something was omitted in a communication; the fact that there was a communication; the time of, date of, or participants in the communication; the fact that [a] layperson has retained a professional, such as an attorney; or the general nature or topic of the communication such as a 'tax' or 'criminal' matter. Although what the attorney and client say about their chosen topic is privileged, conceived at a high level of abstraction the topic itself is unprivileged." (citations omitted)).

[17]*See* Restatement (Third) of Law Governing Lawyers § 69 (2000) ("A communication . . . is any expression through which a privileged person . . . undertakes to convey information to another privileged person and any document or other record revealing such an expression."). Because these actions are not "communications," they are not privileged.

[18]It is of no moment that some of these emails also copied an attorney.  Given the generality of the issues discussed, it seems likely that the intent of the sender of the email was simply to alert the attorney that a confidential communication would be forthcoming in the future. In any event, the burden of establishing privilege is on the party opposing production, and KBR has not established that these documents were shielded confidential communications to an attorney rather than unsheltered directions to another employee to talk to an attorney about a general topic.

[19]On a related but slightly different note, the Court also concludes that to the degree that Document 15 in Privilege Log #3 reveals communications to or from an attorney, it does so for the purpose of seeking business advice. Because the communication contained in this document does not have either seeking or providing legal advice as one of its significant purposes, it must be disclosed.

### IV. Litigation Holds[20]

The last major category of documents the Court considers are litigation hold notices. These emails were sent from KBR's CEO and Vice President of the Legal Department to large groups of individuals, such as "[a]ll KBR employees," instructing them to preserve certain documents in connection with government investigations. Although some decisions from other courts have found that these types of documents are covered by the attorney-client privilege or work product doctrine,[21] the Court concludes that the particular litigation hold notices at issue here are discoverable, though the question is a close one.

The cornerstone requirement of the attorney-client privilege is intent to keep the communication confidential. That is, "[t]he circumstances must indicate that the communicating persons reasonably believed that the communication would be confidential."[22] In the corporate context, this requires that internal corporate communications be shared no more widely than necessary to implement the lawyer's advice. Typically, this means that the attorney-client privilege only covers a lawyer's communications with officers and employees with the responsibility for acting on the lawyer's advice.[23] Sharing of otherwise confidential information within a

---

[20] The analysis in this section applies to Documents 12 and 13 in Privilege Log #2 and Documents 12, 18, 35, 58, 105, 106, 113, 114, 115, 116, and 117 in Privilege Log #3.

[21] *E.g.*, *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007).

[22] Restatement (Third) of Law Governing Lawyers § 71 cmt. c (2000). *See also id.* at § 71 ("A communication is in confidence . . . if, at the time and in the circumstances of the communication, the communicating person reasonably believes that no one will learn the contents of the communication except a privileged person . . . ."); Restatement (Third) of Law Governing Lawyers § 70 (2000) ("Privileged persons . . . are the client (including a prospective client), the client's lawyer, agents of either who facilitate communications between them, and agents of the lawyer who facilitate the representation."); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 67 (D.D.C. 1984) ("Confidentiality is the dispositive factor in deciding whether a communication is privileged."); *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975) ("However, the privilege is limited to communications expressly intended to be confidential, and some showing of an intention of secrecy must be made; the mere relation of attorney and client does not raise a presumption of confidentiality.").

[23] Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges, § 6.12.4 (2014) (citing, among other things, *Upjohn Co. v. United States*, 449 U.S. 383 (1981) and Restatement (Third) of Law Governing Lawyers § 73 cmt.
(continued...)

corporation—even if the sharing is only with employees—can result in loss of the privilege if the sharing goes beyond this "need-to-know limitation."[24]

Crucially, the litigation hold notices at issue here were sent to large groups such as "all KBR employees." Furthermore, follow-up emails encouraged employees to share some of the litigation hold notices with other employees who may not have received or read the first notice. No warning was given that these notices should be disseminated no more widely than necessary. No directive was issued telling employees not to discuss the litigation hold notices outside the company. KBR has thus failed to demonstrate its intent to keep these communications confidential, and the attorney-client privilege does not apply.[25]

Whether these documents are protected by the attorney work product doctrine is an even closer call. As stated above, work product protection attaches to "documents and tangible things that are prepared in anticipation of litigation or for trial."[26] This protects the work of an attorney (or a person acting at the direction of an attorney) from being disclosed to opposing counsel, so that the attorney is free to "prepare his legal theories and plan his strategy without undue burden and needless interference."[27]

It is not clear that these litigation hold notices and follow-up emails represent protected

---

[23]/(...continued)
g (2000)).

[24]/*Id.* at n.162 & accompanying text (2014); *see id.* at n.164 & accompanying text ("However, there is a waiver when the entity circulates the written material to any wider circle of persons, even if the circle consists entirely of persons who are also employees or agents of the organization." (internal quotation marks omitted)).

[25]/The notices did contain a header describing them as "Privileged & Confidential." This designation is not, however, controlling. This type of boilerplate labeling, without any more detailed instruction about the scope of the confidentiality, is not a concrete direction to employees to avoid disclosing the substance of the document. Moreover, follow-up emails encouraging employees to share the notice amongst themselves would destroy whatever confidentiality may have existed.

[26]/Fed. R. Civ. P. 26(b)(3)(A).

[27]/*Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

attorney work product. A party may discover the steps the opposing party has taken to preserve relevant information.[28] The notices were sent from KBR's CEO to large groups of employees, and can fairly be said to merely describe KBR's document retention practices, rather than relate any attorney's preparations for litigation. Thus, it is not clear that these documents are attorney work product at all.

Furthermore, there is little concern about prejudicing KBR's counsel's ability to prepare for litigation if these litigation hold notices are disclosed. This is simply not the type of preparation that is intended to be protected by the privilege, especially given today's liberal standards for conducting discovery where companies have a duty to preserve electronic documents.[29] An attorney cannot complain that his preparations for trial have been unfairly affected by his opponent receiving information about document retention practices to which he is entitled.

In addition, other decisions that have found litigation hold notices to be shielded from disclosure have noted that these documents are often unlikely to lead to the discovery of admissible evidence as required by Rule 26.[30] The litigation hold documents at issue here, however, reflected that KBR had "disclosed to the government the possibility that one or two of [its] former employees may have received 'kick backs' from a selected contractor and [it is] cooperating with the appropriate authorities as they conduct this investigation."[31] Other litigation hold documents said KBR had received a subpoena from the Department of Defense. The documents that KBR shared

---

[28] *E.g.*, *In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007).
[29] Even in the *eBay Seller* case, where the court ultimately did not compel the production of the litigation hold notices, the Court noted that whether attorney-client privilege or work product protection applied was "far from certain." *Id.* at *2 n.3.
[30] *See, e.g.*, *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123–24 (N.D. Ga. 2007).
[31] Doc. 184 at 2.

with the Department of Defense in response to this subpoena are themselves discoverable.[32] These litigation hold notices are likely to provide Plaintiff-Relator Barko with information about what steps KBR took to comply with these subpoenas. Since the litigation hold notices here are themselves relevant, this case is distinguishable from those considering more generic litigation holds.

The Court recognizes that this is a close decision. Other cases that have considered these sorts of documents have reached the opposite conclusion and found them to be privileged or protected work product. But after inspecting these particular litigation hold notices, the Court finds that they are distinguishable from the generic case, and are therefore discoverable.

## V. Remaining Documents

After its *in camera* review, the Court concludes that the remaining documents are covered by either the attorney-client privilege or work product doctrine. Accordingly, the Court concludes that KBR has made the necessary showing of "good cause" to support a protective order as to these documents.

## VI. Conclusion

For the reasons listed above, and as indicated in footnotes 11, 14, 19, and 20, as well as in Appendix A, the Court **GRANTS IN PART** and **DENIES IN PART** KBR's motion for a protective order. KBR has previously appealed the compelled production of other documents in this case. The Court intends to direct this case towards resolution. For that reason, the Court orders Barko not to disclose the contents of the documents. If Barko intends to use or refer to the documents in subsequent filings in this case, the Court orders that such filings be made under seal. This order will remain in effect unless modified or lifted by the Court.

---

[32] *See* Doc. 203 (compelling production of these documents).

IT IS SO ORDERED

Dated: November 20, 2014.                    *s/    James S. Gwin*
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE